In the Matter of the Application of Edmund C. Viemeister, Appellant, for a Peremptory Writ of Mandamus against Patrick J. White, as President of the Board of Education of the Borough of Queens, City of New York, et al., Respondents.

1. Public Health Law — Judicial Notice. The Court of Appeals takes judicial notice of the fact that the common belief of the people of the state of New York is, that vaccination is a preventive of smallpox.

2. Statute Excluding Unvaccinated Persons from Public Schools Constitutional. Section 210 of the Public Health Law (L. 1893, ch. 661, amd. L. 1900, ch. 667, § 2), excluding children and persons not vaccinated from the public schools until vaccinated, is a health law, enacted in a reasonable and proper exercise of the police power of the state by the legislature and violates no right conferred or secured by the Constitution.

*Matter of Viemeister* v. *White,* 88 App. Div. 44, affirmed.

(Argued October 3, 1904; decided October 18, 1904.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered November 25, 1903, which affirmed an order of Special Term denying a motion for a peremptory writ of mandamus to compel the admission of the relator's child to a public school in the borough of Queens, city of New York.

The facts, so far as material, are stated in the opinion.

*John Leary* and *Edmund C. Viemeister*, in person, for appellant. Every child in this state has a constitutional right to an education. (Const. of N. Y. art. 9, § 1.) This right or privilege cannot be withheld nor made conditional, hampered nor embarrassed by the legislature. (*Taylor* v. *Porter*, 4 Hill, 140; *White* v. *White*, 5 Barb. 474; *People* v. *Foghever*, 20 Barb. 198; *People ex rel.* v. *Bd. of Suprs.*, 70 N. Y. 234; *People* v. *Gilson*, 109 N. Y. 389; *Bertholf* v. *O'Reilly*, 74 N. Y. 509.) By the adoption of this mandatory clause of the Constitution, without restricting its operation to vaccinated children, the people of the state eliminated section 200, Laws of 1893, providing that no unvaccinated child should attend public schools, from the statute books. (*Michaels* v. *Fishel*, 169 N. Y. 381.) The contention that such an act is within the police power of the legislature is untenable. (*People* v. *Rosenberg*, 138 N. Y. 410.) The adjudications in this state are all in tone and spirit against the idea of the power in the legislature to enforce vaccination without consent. (*Matter of Walters*, 84 Hun, 458; *Matter of Smith*, 156 N. Y. 74.)

*John J. Delany, Corporation Counsel* (*James D. Bell* of counsel), for respondents. The relator failed to show any clear legal right to the writ of mandamus sought by him, and was unable to adduce either reason or precedent for his claim that the statutes, ordinances and rules under which the defendants acted were unconstitutional or otherwise void. (*Field* v. *Robinson*, 198 Penn. St. 638; *Abell* v. *Clark*, 84 Cal. 226.)

VANN, J. The relator moved for a writ of mandamus to compel the officers having control of a public school in

the county of Queens to readmit his child, a lad ten years of age, to said school without requiring him to be vaccinated. It appeared from the moving papers that the boy had been in regular attendance at the school, and that the principal thereof, pursuant to the instructions of the board of education, had excluded him therefrom, because he refused to be vaccinated. It appeared from the papers read in opposition to the motion that when the relator's son was excluded from the school there was a regulation of the board of education in full force which provided that "No pupil shall be allowed to attend any school, nor shall any teacher be employed in the same, unless such pupil or teacher has been vaccinated." It further appeared that the lad had never been vaccinated, and that he refused to submit to vaccination, but it was not alleged that at the time of such exclusion smallpox was prevalent in the neighborhood, or that there was any special danger from recent exposure or other causes of an immediate spread of the disease.

The Constitution requires the legislature to "provide for the maintenance and support of a system of free common schools, wherein all the children of this State may be educated." (Const. art. 9, § 1.)

The Public Health Law provides that "No child or person not vaccinated shall be admitted or received into any of the public schools of the State, and the trustees or other officers having the charge, management or control of such schools shall cause this provision of law to be enforced. They may adopt a resolution excluding such children and persons not vaccinated from such school until vaccinated. * * *." (Public Health Law, L. 1893, ch. 661, § 200, renumbered § 210 by Laws of 1900, ch. 667, § 2.) The same law provides for the free vaccination of children of suitable age who wish to attend the public schools, provided their parents or guardians are unable to procure vaccination for them. This is a re-enactment of a statute containing the same provisions in substance, passed in 1860, which remained in force until the passage of the Public Health Law in 1893. (L. 1860, ch. 438.)

The question presented is whether the legislature is prohibited by the Constitution from enacting that such children as have not been vaccinated shall be excluded from the public schools. The appellant claims that the Public Health Law places an unreasonable restriction upon the right of his child to attend school and that it violates the section of the Constitution already quoted, as well as the general guaranties for the protection of the rights, privileges and liberties of the citizen. (Const. art. 1, §§ 1 and 6.) The respondents claim that the object and effect of such legislation is the protection of the public health, and that, hence, it is a valid exercise of the police power.

The police power, which belongs to every sovereign state, may be exerted by the legislature subject to the limitations of the Constitution, whenever the exercise thereof will promote the public health, safety or welfare. The power of the legislature to decide what laws are necessary to secure these objects is subject to the power of the courts to decide whether an act purporting to promote the public health or safety has such a reasonable connection therewith as to appear upon inspection to be adapted to that end. A statute entitled a health law must be a health law in fact as well as in name, and must not attempt in the name of the police power to effect a purpose having no adequate connection with the common good. As we have recently said, it "must tend in a degree that is perceptible and clear towards the preservation of the * * * health * * * or welfare of the community, as those words have been used and construed in the many cases heretofore decided." (*Health Dept. of N. Y.* v. *Rector, etc.,* 145 N. Y. 32, 39.) When the sole object and general tendency of legislation is to promote the public health, there is no invasion of the Constitution, even if the enforcement of the law interferes to some extent with liberty or property. These principles are so well established as to require no discussion and we cite but a few out of many authorities relating to the subject. (*Matter of Jacobs,* 98 N. Y. 98, 108; *People* v. *Marx,* 99 N. Y. 377; *People* v. *Arensberg,* 105 N. Y. 123; *People* v.

*Gillson*, 109 N. Y. 389 ; *People* v. *Ewer*, 141 N. Y. 129; *People ex rel. Nechamcus* v. *Warden, etc.*, 144 N. Y. 529 ; *People* v. *Havnor*, 149 N. Y. 195 ; *People* v. *Adirondack Ry. Co.*, 160 N. Y. 225, 236 ; *People* v. *Lochner*, 177 N. Y. 145.)

The right to attend the public schools of the state is necessarily subject to some restrictions and limitations in the interest of the public health. A child afflicted with leprosy, smallpox, scarlet fever or any other disease which is both dangerous and contagious, may be lawfully excluded from attendance so long as the danger of contagion continues. Public health as well as the interest of the school requires this, as otherwise the school might be broken up and a pestilence spread abroad in the community. So a child recently exposed to such a disease may be denied the privilege of our schools until all danger shall have passed. Smallpox is known of all to be a dangerous and contagious disease. If vaccination strongly tends to prevent the transmission or spread of this disease, it logically follows that children may be refused admission to the public schools until they have been vaccinated.

The appellant claims that vaccination does not tend to prevent smallpox, but tends to bring about other diseases, and that it does much harm with no good. It must be conceded that some laymen, both learned and unlearned, and some physicians of great skill and repute, do not believe that vaccination is a preventive of smallpox. The common belief, however, is that it has a decided tendency to prevent the spread of this fearful disease and to render it less dangerous to those who contract it. While not accepted by all, it is accepted by the mass of the people as well as by most members of the medical profession. It has been general in our state and in most civilized nations for generations. It is generally accepted in theory and generally applied in practice, both by the voluntary action of the people and in obedience to the command of law. Nearly every state of the Union has statutes to encourage or, directly or indirectly to require vaccination, and this is

true of most nations of Europe. It is required in nearly all the armies and navies of the world. Vaccination has been compulsory in England since 1854, and the last act upon the subject, passed in 1898, requires every child born in England to be vaccinated within six months of its birth. It became compulsory in Bavaria in 1807; Denmark, 1810; Sweden, 1814; Würtemberg, Hesse and other German states, 1818; Prussia, 1835; Roumania, 1874; Hungary, 1876, and Servia, 1881. It is aided, encouraged, and to some extent, compelled in the other European nations. (24 Enc. Brit. 30.) It is compulsory in but few states and cities in this country, but it is countenanced or promoted in substantially all, and statutes requiring children to be vaccinated in order to attend the public schools have generally been sustained by the courts. (*Abeel* v. *Clark*, 84 Cal. 226; *Bissell* v. *Davison*, 65 Conn. 183; *Blue* v. *Beach*, 155 Ind. 121; *Morris* v. *City of Columbus*, 102 Ga. 792; *State* v. *Hay*, 126 N. C. 999; *Hazen* v. *Strong*, 2 Vt. 427; *In re Rebenack*, 62 Mo. App. 8; *Duffield* v. *Williamsport School District*, 162 Pa. St. 476; Cooley's Cons. Lim. [7th ed.] 880; Prentice on Police Powers, 39, 132; 1 Dillon's Mun. Corp. § 355; Parker & Worthington's Public Health and Safety, § 123.)

A common belief, like common knowledge, does not require evidence to establish its existence, but may be acted upon without proof by the legislature and the courts. While the power to take judicial notice is to be exercised with caution and due care taken to see that the subject comes within the limits of common knowledge, still, when according to the memory and conscience of the judge, instructed by recourse to such sources of information as he deems trustworthy, the matter is clearly within those limits, the power may be exercised by treating the fact as proved without allegation or proof. (*Jones* v. *U. S.*, 137 U. S. 202, 216; *Hunter* v. *N. Y., O. & W. R. R. Co.*, 116 N. Y. 615, 623; *Porter* v. *Waring*, 69 N. Y. 250, 253; *Geist* v. *Detroit City Railway*, 91 Mich. 446; Greenleaf's Ev. [14th ed.] § 5; 1 Wharton's Ev. [3d ed.] § 282; 1 Starkie's Ev. 211; 17 Am. & Eng. Encyc.

[2d ed.] 894.). Common belief in order to become such common knowledge as to be judicially noticed by us must be common in this state, although in a matter pertaining to science it may be strengthened somewhat by the general acceptance of mankind. As was said by Mr. Justice SWAYNE in *Brown* v. *Piper* (91 U. S. 37, 42): "Courts will take notice of whatever is generally known within the limits of their jurisdiction, and if the judge's memory is at fault, he may refresh it by resorting to any means for that purpose which he deems safe and proper. This extends to such matters of science as are involved in the cases brought before him." (See, also, *People* v. *Lochner*, 177 N. Y. 169.)

The fact that the belief is not universal is not controlling, for there is scarcely any belief that is accepted by every one. The possibility that the belief may be wrong and that science may yet show it to be wrong is not conclusive, for the legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases. In a free country where the government is by the people through their chosen representatives, practical legislation admits of no other standard of action, for what the people believe is for the common welfare must be accepted as tending to promote the common welfare, whether it does in fact or not. Any other basis would conflict with the spirit of the Constitution and would sanction measures opposed to a republican form of government.

While we do not decide and cannot decide that vaccination is a preventive of smallpox, we take judicial notice of the fact that this is the common belief of the people of the state, and with this fact as a foundation, we hold that the statute in question is a health law, enacted in a reasonable and proper exercise of the police power. It operates impartially upon all children in the public schools and is designed not only for their protection but for the protection of all the people of the state. The relator's son is excluded from school only until he complies with the law passed to protect the health of all, himself and his family included. No right conferred or secured

by the Constitution was violated by that law or by the action of the school authorities based thereon. In view of the opinions below we regard further discussion as unnecessary, and we affirm the order appealed from, with costs.

CULLEN, Ch. J., O'BRIEN, HAIGHT, MARTIN and WERNER, JJ., concur; GRAY, J., absent.

Order affirmed.